HEARD NOVEMBER TERM, 1877.

## CLEVELAND vs. MILLS.

Where a cause of action upon a guaranty accrued 21st of December, 1866, and the guarantor died in April, 1870: *Held*, That an action upon the guaranty against the heirs and devisees of the guarantor to subject real estate to the payment of the debt, commenced June 21, 1871, was not barred by the Statute of Limitations.

An action against heirs and devisees, to subject real estate, descended or devised, to a debt of the testator or intestate, cannot be commenced until nine months after the death of the testator or intestate, although no executor or administrator of the testator or intestate is a party to the action.

The Statute of Limitations applies to an action against heirs and devisees to subject real estate in their possession to a debt of their ancestor or devisor.

The provision of the Act of 1789 exempting executors or administrators from suit for nine months applies to suits in equity.

BEFORE NORTHROP, J., AT SPARTANBURG, MARCH, 1877.

Action by R. E. Cleveland against J. C. Mills, T. K. Cureton and Mary Cureton, his wife.

The case is as follows:

J. M. Blair and Jas. A. Patton gave to T. K. Cureton and Nancy R. Mills their sealed note for $5,115.26, dated November 19, 1862, and payable twelve months after date. The payees assigned the note before it became due to the plaintiff and guaranteed the payment thereof. N. R. Mills died in April, 1870, leaving some valuable real estate lying in Spartanburg County. She left, also, a last will and testament, which was admitted to probate in said County, but the executor therein named did not qualify. The action was commenced June 21, 1871, against J. C. Mills and Mary Cureton as heirs and devisees of the said N. R. Mills, and T. K. Cureton as husband of the said Mary, to subject the said real estate to the payment of the debt due upon the said guaranty. The defendants pleaded, amongst other things, the Statute of Limitations. At the trial the defendant requested the presiding Judge to charge the

jury that the action was barred by the Statute of Limitations. The request was denied and the defendant excepted.

The jury found for the plaintiff the amount of the note, and the defendant appealed.

*Bobo & Carlisle, Steedman*, for appellants:

The Statute of Limitations began to run in December, 1866.— *Wardlaw* vs. *Buzzard*, 14 Rich., 158.

The Statute of Limitations was not suspended by the death of N. R. Mills or by operation of military orders, or by any law of this State.—Rev. Stat. S. C., 509; *Raymond* vs. *Thomas*, 91 U. S. S. C. Rep., 712; *Shand* vs. *Gage and others*, MS. opinion recently filed.

By the various Acts of our General Assembly the Statute of Limitations was suspended from the maturity of the note, November 19, 1863, until December 21, 1866. At this last date the Statute of Limitations began to run. The action was begun 21st June, 1871, four years and six months after the accrual of the right of action and after the Statute of Limitations had begun to run. The question submitted to the Court is, was the Statute of Limitations a bar to the action? Appellants submit that it is. It is a well-settled principle of law in this State that when the Statute of Limitations has commenced running no subsequent disability can stop it.—*Faysoux* vs. *Prothero*, 1 N. & McC., 296; *Adamson* vs. *Smith*, 2 Mills, 269.

In this case no disability was alleged or proven. To prevent the currency of the Statute of Limitations there must be some positive enactment of the Legislature or it must be suspended by necessary implications. By the Act of 1789, (5 Stat., 112,) executors or administrators are protected from any action for the recovery of debts due by the testator or intestate until nine months after such testator's or intestate's death—a creditor by this statute being prevented from bringing suit for nine months. By the decisions of our Court the statute is suspended for nine months. This suspension of the statute is only where executors or administrators are sued, and the Court cannot add to the exceptions so as to include heirs and devisees.

Chief Justice Marshall, delivering the opinion of the Supreme Court of the United States, in the case of *McIver* vs. *Ragan*,

(2 Wheat., 25,) (cited in Angell on Limitations,' 487,) says: "Wherever the situation of a party was such as, in the opinion of the Legislature, to furnish a motive for excepting him from the operation of the law, [Statute of Limitations,] the Legislature has made the exception. It would be going far for this Court to add to those exceptions." * * * * * And so cautious have our Courts been in extending the exceptions, that Chancellor Wardlaw doubted whether a creditor is entitled in equity as at law to nine months in addition to the four years allowed within which to sue the executor of his deceased debtor.—*Sollee* vs. *Croft*, 7 Rich. Eq., 34.

The plaintiff not having brought his action against the defendants as executors or administrators, but against them as heirs and devisees, is not entitled to the nine months in addition to the four years within which to bring suit. Defendants took possession of the land described in the complaint immediately on the death of Mrs. Mills. There was nothing to prevent plaintiff bringing suit as soon as defendants took possession of the land. No intervening disability existed, either statutory or by necessary implication.

In the case of *Mobley* vs. *Cureton* (6 S. C., 49,) plaintiff in 1868 filed his bill to subject descended real estate in the possession of the heirs to the payment of a sealed note due in 1854. The Court held that the plaintiff was barred by his laches of his remedy in equity, and the bill was dismissed without prejudice to plaintiff's right to pursue the heirs by action at law. The Court further says: "If the action on the bond here had been at law against the heir, it would not have been barred, except from the presumption of payment arising from the lapse of twenty years, or a shorter period, with such circumstances as would contribute to strengthen it." Can there be any doubt, if twenty years had elapsed since the accrual of the right of action on the sealed note, but that the Court would have presumed payment at law, as it did decide that the plaintiff was in equity barred by his laches?

Mobley brought his action at law in 1871. (6 S. C., 49.) The defendants relied upon the presumption of payment arising from lapse of time. The Court held that "the facts set forth as proof of payment and laches were insufficient to enable the Court to determine the questions of payment or laches." If twenty years had elapsed, would not the Court have decided that the claims would have been presumed to have been paid from the lapse of time? If

the presumption of payment will arise in twenty years on a sealed claim, will not four years be a complete bar to a claim not under seal? In the present case four years and six months had elapsed from the time that the Statute of Limitations began to run to the commencement of the action. The action is on a claim not under seal, and to such actions four years is a complete bar unless the respondent can produce some law which arrested the Statute of Limitations. We have failed to find any such law.

The respondent relies with confidence upon the Statute of Limitations, which Justice Cheves, in the case of *Adamson* vs. *Smith*, (2 Mills, 269,) styles: "Statutes of peace and repose, necessary for the comfort of society. They are found in some shape or other in every country and under every government; their adoption is scarcely a matter of choice."

*Simpson*, contra:

Whether this be regarded as an action on the debt of the ancestor or on the liability of the appellants as heirs and devisees, the Statute of Limitations fails as a defense.

If it be regarded as a suit on the contract of the ancestor, Mrs. Mills, then, under the facts, it could not have been barred until the 25th September, 1871; but the action was *commenced* several months before this date.

1. It could not have been barred before the 25th of September, 1871, because the statute did not commence for Mrs. Mills until 25th December, 1866. Mrs. Mills died in April, 1870, some eight months before the statutory period expired. This suspended the statute for nine months. Four years and nine months from 25th December, 1866, would be 25th September, 1871. The action was commenced in June, 1871, some three months before the time was out.

2. At the time, then, this action was commenced against these appellants there was a subsisting debt against their ancestor, and, therefore, if they are sued on their ancestor's debt, the statute cannot shield them.—*Moses* vs. *Jones*, 2 N. & McC., 259.

But suppose it be regarded as the debt of the appellants, founded upon their own contract, on account of their possession of the real property of the ancestor. In that case the statute would be much less a protection.

1. Because the statute does not protect until four years after the accrual of the right of action. Here the right of action did not accrue against these appellants until they became heirs or devisees. This did not take place until the death of the ancestor, which was in April, 1870. The action was brought in June, 1871. This was within the four years from the accrual of the right of action.

Legatees and distributees cannot avail themselves of the statute against a debt of their testator or intestate short of four years' possession of the personal property received by them.—*Trescott* vs. *Trescott*, 1 McC., 176; *Buchanan* vs. *James*, 1 Sp. Eq., 382.

This proceeds upon the principle that after four years they then hold the property, not as legatees and distributees, but by possession—a new title; and it concedes the doctrine that as long as they hold as legatees and distributees, if the debt of the testator or intestate is subsisting they are liable.

If this is so as to personal estates, why is it not so as to real estate?

The appellants cannot tack the time which elapsed before the death of the ancestor to the time they became heirs or devisees before suit, to make out the four years, leaving out the nine months.

Because, if this could be done, there would still be a subsisting debt against the ancestor, and yet the heirs and devisees relieved, which would be a strange anomaly,—under the principle making heirs or devisees liable for the debt of the ancestor.

But even if they could tack, when did they become heirs and devisees? Not until twelve months after the death of the ancestor.

The executors could not assent to the devise before that period.

But respondent submits that in no event could the appellants tack, because the true theory of their liability is that they are sued upon their own contract to pay the debt of their ancestor, (which the law raises upon the receipt of real estate, either by descent or devise,) and the statute does not commence until the accrual of the right of action on this contract of theirs, which, in this case, did not take place until about a year before suit was brought.—Angell on Limitations, 80.

But again: It is a rule that legatees become trustees to pay debts of the testator to the extent of property received by them where there is deficiency of assets, and they may be compelled to refund to pay debts.—1 Story Eq., 503; *Smith* vs. *Cohens*, 1 Bail. Eq., 70.

A legatee is held to be a trustee for creditors. It is because the property received by him was liable for debts.

The same reasoning would make an heir or devisee in possession of real estate a trustee for creditors; and inasmuch as the legatee could not protect himself by the statute short of four years' possession, which would change his title, neither could an heir or devisee protect himself short of a period of time which would change his title, e. g., ten years' adverse possession.

March 30, 1878. The opinion of the Court was delivered by

McIVER, A. J. This was an action to subject certain lands, of which Nancy R. Mills died seized and possessed, in the hands of the defendants, as her heirs and devisees, to the payment of a ·debt due the plaintiff by Nancy R. Mills, by reason of her guaranty of a note. The defense principally relied upon was the Statute of Limitations, and no other question is presented for our consideration.

The statute did not commence to run in favor of Mrs. Mills until the 21st December, 1866, it having been suspended until that time by the fifth Section of the Act commonly called the Stay Law, (*Harllee & Pressley* vs. *Ward*, 15 Rich., 231,) and if she had lived would have run out on the 21st December, 1870. She, however, having died some time in April, 1870, (the precise day not being stated and not being material,) during the currency of the statute, by virtue of the provisions of the Act of 1789, (Gen. Stat., Chapter CIX, § 10, p. 509,) a further period of nine months must be added.— *Moses* vs. *Jones*, 2 N. & McC., 259; *Lawton* vs. *Bowman*, 2 Strob., 190. The result, therefore, would be that the action against her executor or administrator would not be barred until the 21st September, 1871, some months after this action was commenced.

The defendants took possession of the real estate as heirs and devisees of Mrs. Mills, at what particular time does not appear, but, necessarily, after her death in April, 1870. No question has been made, either here or in the Court below, as to the necessity of making the executor of Mrs. Mills a party, and, therefore, we are precluded from considering it or determining anything on that point. It is concluded, on the part of the defendants, that while it may be true that the action was not barred as against the executor of Mrs. Mills, when it was commenced, by virtue of the provisions of the Act of 1789, yet this action being against heirs and devisees, and not against the executor, the provisions of the Act of 1789 do not apply, and that without the addition of the nine months pro-

vided for by that Act, and the decisions thereon, this action would have been barred as against them on the 21st December, 1870, precisely six months before it was commenced. They, therefore, requested the Circuit Judge to charge the jury to this effect, and excepted to his refusal so to do. It must be remembered that this is not an action to recover from the defendants the amount of a debt due by the testatrix, for the defendants cannot be held liable, *personally*, at all. If the property which has gone into the possession of the defendants, as heirs or devisees, had proved to be of less value than the amount of the debt, the plaintiff could only recover to the amount of such value by subjecting the property to the payment of the debt *as far as it would go*, and for any deficiency they would have no claim against the defendants personally. It is, therefore, as has been above stated, an action to subject the lands of the debtor, Mrs. Mills, in the hands of these defendants as heirs and devisees, to the payment of her debt, and it is founded upon the equity which creditors have to follow the assets into the hands of heirs and devisees to obtain payment of their debt. The question, therefore, is, not whether the defendants owe the debt, for there is no pretense that they ever did, but whether the testatrix owed it; not whether the right of action *on the debt* against the defendants is barred by the Statute of Limitations, for, strictly speaking, there never was such a right of action, but whether the right of action *on the debt* against her or her executor is barred. Any other construction would involve not only great injustice to an indulgent creditor but would result in depriving him of his plain legal rights by reducing the statutory period which would bar his action. Take this very case as an example. The plaintiff certainly could, without detriment to his legal rights, indulge his debtor, and postpone the bringing of his action to any day within the period of four years from the 21st December, 1866. But if the theory of the defendants is allowed to prevail, this period would be reduced to three years and four months. For assuming, for the sake of convenience, that Mrs. Mills died on the 21st April, 1870, the plaintiff could not bring his action within nine months from that day, that is, until the 21st January, 1871, a point beyond the statutory period as contended for by the defendants; because if he brought it against the executor the Act of 1789 would certainly apply, and if he brought it against the defendants alone there can be no doubt but that they could force him to make the executor a party defendant, and then

the executor could plead the nine months' exemption. If, then, as defendants contend, the nine months' exemption is not to be added to the statutory period in this case, the plaintiff, instead of being allowed four years, would be forced to bring his action within three years and four months—that is between the 21st December, 1866, and the 21st April, 1870.

It is very true that Wardlaw, Ch., in *Sollee* vs. *Croft*, (7 Rich. Eq., 40,) expressed a doubt whether the provisions of the Act of 1789 above cited applied to proceedings in equity, but this being a mere passing observation, not necessary to the point decided in the case, is not authority; and while we are disposed to pay the utmost respect even to the *dicta* emanating from that eminent Chancellor, we may be permitted to say that this doubt, however well founded it may have been at that time, could scarcely be entertained now since the abolition of all distinctions between the pleadings at law and in equity. The Chancellor's doubt is founded upon the terms of the Act which exempts executors and administrators from " any *action* for the recovery of the *debts due* by their testators or intestates," for, as he says, " a bill in equity is not strictly an *action*, and a claim for account is not strictly a suit for a debt." But since, by the provisions of the Code of Procedure, the term " action " is equally applicable to proceedings in which equitable relief is sought as well as those for the recovery of demands of a strictly legal character, and as the General Statutes, adopted subsequently to the Code, provides that " *No* action shall be commenced against any executor or administrator for the recovery of the debts due by the testator or intestate until nine months after such testator or intestate's death," there would seem to be now no ground for the doubt expressed by the learned Chancellor. And in reference to this particular case we may add that this was an action not for an account, but the recovery of a *debt* due by the testatrix.

The only defense, therefore, that could avail the defendants would have been either to show that there was no such debt due by the testatrix or that the action thereon against her executor was barred by the Statute of Limitations, which they might do, even though the executor should omit to interpose such a defense (*Bird* vs. *Houze*, Sp. Eq., 250,) or to show such laches on the part of the plaintiff as would deprive him of the right to invoke the equity powers of the Court, as in *Mobley* vs. *Cureton*, (2 S. C., 140,) or to have relied on their own possession for the statutory period, as in *Miller*

vs. *Mitchell,* (Bail. Eq., *437). None of these things have they shown, and, therefore, there was no error in the refusal of the Circuit Judge to instruct the jury as requested by the defendants.

The motion is dismissed.

*Willard,* C. J., and *Haskell,* A. J., concurred.